### THE STATE v. W. H. SMITH, *Appellant*.

**Criminal Law:** NEGLIGENTLY COMPOUNDING A MEDICAL PRESCRIPTION. An indictment under Sec. 18, p. 447, Wag. Stat., against a druggist for manslaughter in negligently filling a medical prescription with opium, by reason of which the person to whom it was administered died, failed to charge that defendant delivered the medicine to any one to be administered to deceased, or to state what were the ingredients named in the prescription, or the respective quantities of

the several ingredients, or by whom the medicine was prescribed; *Held*, that these were essential averments, and without them the indictment was defective

*Appeal from Nodaway Circuit Court*—HON. H. S. KELLY, Judge.

Defendant, a druggist, was indicted for manslaughter in the fourth degree, in carelessly and negligently filling a prescription. The indictment was as follows :

The grand jurors of the State of Missouri for the body of the county of Nodaway, being duly empanneled and sworn, upon their oaths present: that William H. Smith, late of said county, on or about the 30th day of June, A. D. 1874, at the county of Nodaway, was employed as clerk in a certain drug store in the town of Quitman, in said county, and as such engaged in selling drugs and medicines and in preparing, compounding and filling prescriptions of medicines for the healing and curing of persons sick and diseased, and in the sale and disposition of deadly poisons to such persons as might solicit the same ; and that said William H. Smith, as such clerk as aforesaid, then and there had and took upon himself the care, charge, management and control of the drugs, medicines and poisons in such drug store, and of the sale, compounding and disposition of such drugs, medicines and poisons, and that it then and there became and was the duty of said William H. Smith to sell such drugs, medicines and poisons as might be solicited, and to compound and fill prescriptions of medicines for the curing of persons sick and diseased, as might be ordered, directed and required.

And the jurors aforesaid, upon their oaths aforesaid, further present: that said William H. Smith, at the time and place aforesaid, so having the care, charge, management and control of said drug store as aforesaid, a certain quantity, to-wit: thirty grains of powdered opium, a deadly poison, did willfully, feloniously, culpably and negligently put, infuse, mix and mingle in and together with certain

salutary medicines, then lately before prescribed for one infant male child of the age of fifteen days, then lately born, of the body of Sarah J. Davis, and without name, which said salutary medicines were then and there, being by said William H. Smith made up, mixed and compounded for said infant male child, then lately born of the body of Sarah J. Davis, and without name, to be taken by the said infant male child, then lately born of the body of Sarah J. Davis, and without name, the said William H. Smith then and there well knowing that said powdered opium was a deadly poison.

And the jurors aforesaid, do further present: that the said William H. Smith, the said powdered opium so as aforesaid by him, the said William H. Smith, put, infused, mixed and mingled in and with such salutary medicines as aforesaid, did willfully, feloniously and with culpable negligence, put, mix, mingle and place, in the place and stead of powdered rhubarb, said rhubarb being a curative and healthy medicine, there lately before prescribed, with the said certain salutary medicines aforesaid, for the said infant male child, then lately born of the body of Sarah J. Davis, and without name.

And the said jurors further present: that said infant male child then lately born of the body of Sarah J. Davis, and without name, was then and there a male child of tender years, to-wit: of the age of fifteen days, and that one Sarah J. Davis was then and there the mother and nurse of said infant male child then lately born of the body of Sarah J. Davis, and without name, and as such mother and nurse had the charge and care of said infant male child, then lately born of the body of Sarah J. Davis, and without name, and was then and there required to and did wait upon, nurse and administer to said infant male child, then lately born of the body of Sarah J. Davis, and without name, by giving and administering to said infant male child, then lately born of the body of said Sarah J. Davis,

and without name, food and medicine for the health and cure of said child aforesaid.

And the jurors aforesaid, upon their oaths aforesaid, do further present: that the said Sarah J. Davis not knowing that the said opium, put, infused in and mixed together with said certain salutary medicines as aforesaid, by the said William H. Smith aforesaid, in the place and stead of said curative and healthy medicine aforesaid, to-wit: the said powdered rhubarb aforesaid, then lately before prescribed for said infant male child, then lately born of the body of Sarah J. Davis, and without name, to be taken by the said infant male child, then lately born of the body of Sarah J. Davis, and without name, in the manner aforesaid, to be a deadly poison, but believing the same to be a true and real medicine, then lately before prescribed, to be made up for and taken by said infant male child, then lately born of the body of Sarah J. Davis, and without name, afterward, to-wit: on or about the day aforesaid, and at the place aforesaid, the said powdered opium so as aforesaid, put, infused in and mixed together with such salutary medicines aforesaid, by the said William H. Smith aforesaid, in the place and stead of the said healthy and curative medicine aforesaid, then lately before prescribed for, and to be taken by said infant male child, then lately born of the body of Sarah J. Davis, and without name, did give and administer to said infant male child, then lately born of the body of Sarah J. Davis, and without name, to take and swallow down into his body for the health of and to cure said infant male child, then lately born of the body of Sarah J. Davis, and without name; and, further, that the said infant male child, then lately born of the body of Sarah J. Davis, and without name, not knowing the said powdered opium aforesaid, so in the manner and form aforesaid, put, infused in and mixed together with such salutary medicines aforesaid, by the said William H. Smith aforesaid, in the place and stead of such powdered rhubarb aforesaid, (the said healthy and curative medicine aforesaid,) then lately before

prescribed, to be made up for and to be taken by the said infant male child, then lately born of the body of Sarah J. Davis, and without name, in the manner and form aforesaid, to be a deadly poison, he the said infant male child, then lately born of the body of Sarah J. Davis, and without name, the said powdered opium, when so given and administered by the said Sarah J. Davis, the said mother and nurse aforesaid, in the manner and form aforesaid, did take and swallow down into his body, by means of which taking and swallowing down into the body of the said infant male child, then lately born of the body of Sarah J. Davis, and without name, of the powdered opium aforesaid, so as aforesaid, by the said William H. Smith, put, infused in and mixed together with said salutary medicine, then lately before prescribed for, and to be taken by said infant male child, then lately born of the body of Sarah J. Davis, and without name, the said infant male child, then lately born of the body of Sarah J. Davis, and without name, then and there became sick and distempered in his body, of which sickness and distemper of body, occasioned by the said taking and swallowing down into the body of the said infant male child, then lately born of the body of Sarah J. Davis, and without name, and of the said powdered opium so as aforesaid, put, infused in and mixed together with said salutary medicine aforesaid, by the said William H. Smith aforesaid, the said infant male child, then lately born of the body of Sarah J. Davis, and without name, on or about the first day of July, 1874, at the place aforesaid, died.

And so the jurors aforesaid, upon their oaths aforesaid, do say: that the said William H. Smith in the manner and form aforesaid, feloniously and willfully, of the culpable negligence of him, the said William H. Smith, the said infant male child, then lately born of the body of Sarah J. Davis, and without name, did poison and kill, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

*Dawson & Edwards* for appellant.

1.   The principal objection to the indictment is, that it nowhere alleges that defendant delivered or administered the powder to the child, or caused it to be done.   This was a fact material to be proved, and without the proof of it, no crime could be established against the defendant.   The indictment was, therefore, in this respect, fatally defective. *State v. Pugh*, 15 Mo. 510; *State v. Derossett*, 19 Mo. 383; *State v. Holden*, 48 Mo. 93; *State v. Evers*, 49 Mo. 542.

2.   The indictment does not set out what the prescription was, or charge that opium was not one of the ingredients mentioned in it.   Defendant had a right to be informed with reasonable certainly of the charge against him.

*J. L. Smith*, Attorney-General, and *C. A. Anthony* for the State.

The objection that the indictment does not allege the delivery of the powders, is not well taken.   The indictment alleges that Smith " made up, mixed and compounded for said infant male child," the powders, " to be taken by the said child," and that Mary Davis, the mother and nurse of said child, " did give and administer to said child " the powders, not knowing that they contained the poison.   In fact, it makes no difference to whom the powders were delivered.   The indictment sets forth that the defendant undertook to fill the prescription; that he filled it in such a careless manner that he " infused " opium instead of rhubarb in the powders; that the prescription was filled for the child; the powders were administered to the child and death ensued.   Smith's carelessness and negligence lead directly to and result in the death of the child.

PER CURIAM.—If the indictment be analyzed and reduced within a reasonable and readable compass, it will be

seen that it does not allege that defendant delivered the powders to any one to be administered to the child. It does not appear from the indictment how Sarah J. Davis procured the powders. It is consistent with the allegations in the indictment that Smith, although he compounded the prescription, never delivered it to any one to be administered to the child. It may be inferred from the indictment that defendant delivered the powders to some one, but it is only an inference, not by any means specifically or substantially alleged, and proof that after he prepared the powders he discovered his mistake, and carefully put them away, and some one else got them and delivered them to Mrs. Davis, would not contradict the indictment. It is not alleged that any one asked the defendant to compound the prescription. What were the ingredients named in the prescription, or the respective quantities, or by whom prescribed is not stated. The innocence of the accused is not inconsistent with the averments in the indictment. It is very verbose, containing a great deal which might have been omitted, and many times repeating what it would have been sufficient to state once, but amid all its verbosity and prolixity, we fail to discover essential averments that could have been made in very few words.

Judgment reversed and cause remanded.

REVERSED.